UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHANDA WILLIAMS,                 )
                  Plaintiff,     )
                                 )
        v.                       )          Case No. 2:19-cv-178
                                 )
STATE OF VERMONT,                )
                  Defendant.     )

### DEFENDANT'S MOTION TO DISMISS
### OR IN THE ALTERNATIVE FOR A MORE DEFINITE STATEMENT

Defendant, State of Vermont, hereby moves to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  In the alternative, Defendant moves for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  In support, Defendant relies on the following Memorandum of Law.

MEMORANDUM OF LAW

Plaintiff has filed a two-page, one-count complaint claiming that she experienced racial discrimination inconsistent with Title VII of the Federal Civil Rights Act.  The complaint contains a section titled "Facts," which contains a total of eight paragraphs.  Because these eight paragraphs do not contain content that if true could support a claim, the complaint should be dismissed in its entirety.

Allegations

Plaintiff alleges that she is African-American and "was employed by the Vermont judiciary as a clerk in the Superior Court Criminal Division, Washington Unit as a Docket Clerk B." Complaint ¶¶ 6-7.  Although Plaintiff acknowledges that there were multiple Docket Clerk Bs in more than one division by alleging that she was employed "as a clerk" rather than "the

clerk" in the "Criminal Division" rather than the "Washington Unit" she provides no allegations about the overall composition of the Unit.  Plaintiff does not state how many Docket Clerk Bs there were, how many divisions there were, or whether her supervisor's hiring practices while Plaintiff was employed increased or decreased the diversity of the Unit.

Plaintiff does allege that she "was the only African-American" in her office.  Complaint ¶ 8.  However, she provides the Court with no context that would allow it to infer whether her office was more, or less, diverse than Vermont as a whole as a result.  More specifically, it is a matter of public record that Vermont's population is approximately 1.4% Black or African-American.[1]  Thus, Plaintiff's allegations suggest that her office was more diverse than Vermont generally unless the Vermont Judiciary has 70 or more employees in Barre, which Plaintiff does not allege to be the case.

In paragraph nine, Plaintiff states the conclusion that "[S]he was subject to a hostile work environment from white coworkers and from her white supervisor Tammy Tyda."  However, the complaint does not allege that any of her coworkers said or did anything at any time during her employment, Complaint ¶¶ 6-13, and as to her supervisor alleges only that her supervisor told her "that 'we are up to speed' and her position was being eliminated because of lack of work.'"  Complaint ¶ 10.  Plaintiff's remaining allegations are that she lost her housing when her employment ended, that she "later learned that the position Docket Clerk B for the Barre location was re-filled shortly after her departure by another person who is not African-American" and that she received a consent to sue letter from the EEOC.  Complaint ¶¶ 11-13.

---

[1] *See* U.S. Census Bureau, Quick Facts, Vermont, available at https://www.census.gov/quickfacts/VT

I.      Plaintiff Has Failed to Plead a Hostile Work Environment Claim

In paragraph nine, Plaintiff attempts to state a hostile work environment claim by concluding that "[s]he was subject to a hostile work environment from white coworkers and from her white supervisor Tammy Tyda."  *See* Complaint ¶ 9.  This effort fails because the Court need not credit "her mere conclusion[] that a hostile work environment" existed within the Vermont Judiciary and Plaintiff has failed to "plausibly allege facts" that could support such a conclusion.  *See Salas v. New York City Dep't of Investigation*, 298 F. Supp. 3d 676, 683 (S.D.N.Y. 2018); *see also, e.g. Alvarado v. Mt. Pleasant Cottage Sch. Dist.*, No. 18–cv–494, 2019 WL 4039149, at *7 (S.D.N.Y. Aug. 27, 2019) (when considering a hostile work environment claim, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation,' or to credit 'mere conclusory statements' or '[t]hreadbare recitals of the elements of a cause of action'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Rather, "[t]o state a claim for a hostile work environment in violation of Title VII, a Plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, . . . creates an environment a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment" based on a protected characteristic.  *Witherbee v. Town of Brattleboro*, No. 2:18–cv–113, 2019 WL 2476722 at *8 (D. Vt. June 13, 2019) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  "Among the factors the United States Supreme Court considers are 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance.'"  *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

Plaintiff's hostile work environment claim fails because she alleges no conduct at all, much less frequent "discriminatory conduct" that was "physically threatening or humiliating" or "offensive" by anyone she worked with during her employment. *Id.*; Complaint ¶¶ 6-13. Plaintiff specifically does not allege that any of her coworkers said or did anything at all and as to her supervisor alleges only that her supervisor told her "that 'we are up to speed' and her position was being eliminated because of lack of work.'" Complaint ¶ 10. By failing to allege that her coworkers said or did anything, or that her supervisor said or did anything other than tell her at the conclusion of her employment that her position was being eliminated, Plaintiff has failed to "plead facts that would tend to show" that anyone in her workplace engaged in "conduct" of any kind during her employment, much less "objectively severe or pervasive" discriminatory conduct that created a hostile work environment. *Witherbee*, 2019 WL 2476722, at *8; *accord Salas*, 298 F. Supp. 3d at 683 (dismissing a hostile work environment claim where the Plaintiff "failed to allege even a single instance where she or a coworker was personally harassed on the basis of religion").

II.     Plaintiff Has Failed to Plead a Racial Discrimination Claim

"[T]o defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015). A Plaintiff "may prove discrimination indirectly either by meeting the requirements of *McDonnell Douglas* and showing that the employer's stated reason for its employment action was a pretext to cover up discrimination . . . or by otherwise creating a mosaic of intentional discrimination by identifying

bits and pieces of evidence that together give rise to an inference of discrimination." *Id.* (quotations and citations omitted).

"At the pleading stage, then, a Plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* Put another way, at the pleading stage, "the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas*." *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). Thus, if the Plaintiff "makes a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation, then she has satisfied the prima facie requirements" and the burden of production shifts to the employer. *Id.* at 311.

Here, Plaintiff makes no allegations that if true would "create[e] a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination." Courts have rejected efforts to suggest an inference of discrimination based on context free allegations like Plaintiff's indication that she "was the only African-American" in her office. *See* Complaint ¶ 8; *De La Pena v. Metropolitan Life Ins. Co.*, 953 F. Supp. 2d 393, 413 (E.D.N.Y. 2013) (granting a motion to dismiss and stating that "[t]he fact that the Plaintiff was the only Filipino in his office is not sufficient to connect" actions to an asserted "discriminatory intent"); *Anderson v. Hertz Corp.*, 507 F. Supp.2d 320, 329 (S.D.N.Y. 2007) (granting a motion for summary judgment and explaining that "[t]he fact that Plaintiff was the only African-American" at a particular site "does not supply evidence sufficient . . . to establish a

prima facie case of discrimination"). Given that Vermont's population is approximately 1.4% Black or African-American, Plaintiff's allegations actually suggest that her office was relatively more diverse than Vermont, unless the Barre Clerk's Office has 70 or more employees, which Plaintiff does not allege to be the case.[2]

Indeed, Plaintiff's allegation that she only had one supervisor affirmatively contradicts any suggestion of discrimination, particularly given that Plaintiff does not allege that she was employed by the Judiciary for an extended period of time or make any allegations about the hiring practices of her supervisor. *See* Complaint ¶ 9. Indeed, Plaintiff does not even allege that the individual her supervisor selected to fill the position referenced in paragraph 12 was Caucasian. *Id.* ¶ 12. The same actor inference – while not controlling – weighs against an inference of discrimination because when the same supervisor hires a Plaintiff, and later ends their employment, "one cannot logically impute to that person an invidious intent to discriminate." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 132 (2d Cir. 2000) (quotations omitted). And it is "a strong inference that discrimination was not a motivating factor" where the same supervisor began and ended the employment "within a relatively short time." *Id.* at 137; *Anderson,* 507 F. Supp. 2d at 330 ("it is difficult to impute" to the same supervisor "an invidious motivation that would be inconsistent with the decision to hire" "especially . . . a short time after the hiring") (quotations omitted).

Plaintiff does not allege that anyone in her office made any race related statements at any time, or that she was treated differently than any of her coworkers. Complaint ¶¶ 6-13. Courts have also rejected efforts to plead an inference of discrimination based on "bald assertions of discrimination . . . unsupported by any comments, actions, or examples of similarly situated

---

[2] *See* U.S. Census Bureau, Quick Facts, Vermont, available at https://www.census.gov/quickfacts/VT

individuals" outside of the Plaintiff's protected class "being treated differently." *Solo Obi Omor v. Sera Sec. Servs., LLC*, No. 14-cv-2602, 2015 WL 1781368, *5 (S.D.N.Y. April 15, 2015) (Maas, M.J.); *De La Pena v. Metropolitan Life Ins. Co.*, 552 Fed. Appx. 98, 100 (2d Cir. 2014) (affirming the dismissal of a claim "unsupported by any meaningful comments, actions, or examples of similarly situated persons . . . being treated differently" as "implausible and insufficient to survive a motion to dismiss").

Paragraph 12 does allege that "the position Docket Clerk B for the Barre location was re-filled shortly after" Plaintiff's departure "by another person who is not African-American." Complaint ¶ 12. But the complaint does not even state the conclusion that the other person was similarly situated, much less make factual allegations that could support such a conclusion. *See id; see also Littlejohn*, 795 F.3d at 313 (stating that the alleged replacement of a Plaintiff "by someone outside the protected class will ordinarily suffice for the required inference of discrimination" and discussing specific allegations that a white employee was less qualified because she had "no prior EEO experience" having instead focused previously on "child welfare case practices"); *Wang v. GEICO*, No. 15-cv-1773, 2016 WL 11469653, at *4 (E.D.N.Y. Mar. 31, 2016) (dismissing a disparate treatment claim where the Plaintiff failed to allege facts, rather than conclusions, about her qualifications relative to other referenced individuals). In addition, to the extent the complaint asks the Court to assume that the Docket Clerk B position referenced in paragraph 12 was the same Docket Clerk B position Plaintiff was hired for, it provides no factual allegations that could support such an assumption.

Plaintiff acknowledges that there were multiple Docket Clerk B positions in multiple divisions by alleging that she was employed "as a Docket Clerk B" in "the Superior Court Criminal Division, Washington Unit" as opposed to "the only Docket Clerk B" in either the

criminal division, or the Unit as a whole.  *See* Complaint ¶ 7.  However, she does not specify how many Docket Clerk B positions there were, in how many divisions, or whether they were permanent or temporary positions.  And she does not allege that she was hired for a permanent position or that the Docket Clerk B position referenced in paragraph 12 of the complaint was in the Criminal Division.  Complaint ¶¶ 6-13

In sum, Plaintiff makes no factual allegations "identifying bits and pieces of evidence that together give rise to an inference of discrimination." *Vega,* 801 F.3d at 87.  And her failure to do so is not a product of this case being at the pleading stage.  Plaintiff is represented by experienced employment counsel and worked in the Washington Unit.  She knows how long she worked there, who she worked with, what divisions they worked in, who her supervisor hired while she was there, whether her supervisor's hiring practices increased, or decreased the diversity of the office, and whether she was hired for a permanent or temporary position.

Plaintiff's allegations also fail if she intends to use the "elements of a prima facie case" under *McDonnell Douglas* "as a prism to shed light upon the plausibility" of her claim.  *Vega,* 801 F.3d at 84, n.7 (quoting *Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49, 54 (1st Cir. 2013)).  Plaintiff's factual allegations do address the first *McDonnell Douglas* factor – that she is a member of a protected class.  *See* Complaint ¶ 6 (alleging that Plaintiff "is African-American").

However, the complaint contains no allegations relevant to the second factor – that Plaintiff "was qualified for the position she sought" or, put another way, that she met her "employer's legitimate expectations" while she was employed.  *Id.*; *Kahn v. Bank of America, N.A.,* 572 F. Supp. 2d 278, 291 (N.D.N.Y. 2008) (finding on summary judgment that a plaintiff did not meet his employer's legitimate expectations as a result of repeated errors during his

employment).  Plaintiff does not allege, for example, that her performance was adequate, or that her supervisor had not received complaints about her performance.

Turning to the third factor, the complaint does not specify whether Plaintiff seeks to proceed on a failure to hire, or improper discharge, theory.  To the extent that Plaintiff seeks to proceed on the theory that she should have been hired for the Docket Clerk B position referenced in paragraph 12 of the complaint, her claim fails as a matter of law because she does not allege that she applied for that position.  *See McCain v. Sprint Cellular Corp.*, No. 2:16–cv–18, 2016 WL 11596029, at *7 (D. Vt. Aug. 16, 2016) ("Mr. McCain does not allege that he submitted an application . . . and this failure is fatal to his claim");[3] *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) ("[w]e read *McDonnell Douglas* . . . generally to require a Plaintiff to allege that she or he applied for a specific position or positions and was rejected therefrom").

Plaintiff has also failed to adequately allege that she experienced an adverse employment action if she seeks to proceed on a wrongful discharge theory.  Plaintiff does not allege that she was hired to fill a permanent position, and her allegation that she was told by her supervisor "that we are up to speed and her position was being eliminated because of lack of work" suggests the opposite.  Complaint ¶ 10.  While authority on the issue is not uniform, many courts have found that the conclusion of a temporary position is not an adverse employment action.  *See, e.g., Tillman v. Verizon New York, Inc.*, 118 F. Supp. 3d 515, 534 (E.D.N.Y. 2015) (finding that the end of a three-year interval of temporary employment was not an adverse employment action); *Reith v. TXU Corp.*, No. 4:05–cv–33, 2006 WL 887413, at *6-7 (E.D. Tex. April 4, 2006) (recommending on summary judgment that no adverse employment action be found where "there

---

[3] Mr. McCain was subsequently granted leave to file an amended complaint in which he alleged that he indicated his desire to submit an application to Sprint and "Sprint refused to accept or consider" it on potentially racially motivated grounds.  2017 WL 11165389, at *2-3 (D. Vt. Feb. 7, 2017).

was no more work to be done" and a temporary employment assignment ended); *adopted* 2016

WL 1149206 (E.D. Tex. April 27, 2006).[4]

Finally, as described in more detail above, Plaintiff has failed to "sustain a minimal

burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn*, 795

F.3d at 311.  She does not allege that her workplace was less diverse than Vermont as a whole, or

that anyone made any race related statements at any time, and her allegation that she had only

one supervisor weighs against an inference of discrimination because "if the person who fires an

employee is the same person that hired them, one cannot logically impute to that person an

invidious intent to discriminate against the employee." *Carlton*, 202 F.3d at 132 (quotations

omitted).  Rather, Plaintiff makes only the type of "bald assertions of discrimination . . .

unsupported by any comments, actions, or examples of similarly situated individuals" outside of

her protected class "being treated differently" that are subject to dismissal.  *Solo*, 2015 WL

1781368, at *5; *accord De La Pena*, 552 F' Appx. at 100 (affirming the dismissal as

"implausible and insufficient" of a claim "unsupported by any meaningful comments, actions, or

examples of similarly situated persons . . . being treated differently").

Conclusion

As described in Sections I and II above, Plaintiff has not identified any statements or

actions that could support a hostile work environment claim and has made only limited and

conclusory allegations relating to the *McDonnell Douglas* factors and what she contends could

support an inference of discrimination.  Accordingly, the complaint should be dismissed in its

---

[4] *But see EEOC v New Breed Logistics*, No. 10–2696, 2013 WL 1181471 (W.D. Tenn. Mar. 22, 2013). *New Breed* distinguished cases finding "that the end of a temporary employment assignment" is not an adverse employment action and reached a contrary conclusion.  *Id.* at *13.  Unlike this case, in *New Breed*, the EEOC found problematic conduct and opposed summary judgment based on a record replete with evidence offered by several different women of overt, profane, vulgar sexual advances, unwanted physical contact, and threats by a male New Breed employee. *Id.*, at *3-7, 9.

entirety.  In the alternative, Plaintiff should be ordered to provide a more definitive statement so that Defendant can reasonably prepare a response with an understanding of the alleged predicate and nature of Plaintiff's claim.  *See* Fed. R. Civ. P.  12(e).

DATED at Montpelier, Vermont this 15th day of May 2020.

STATE OF VERMONT

THOMAS J. DONOVAN, JR.
ATTORNEY GENERAL

By:     */s/ David Boyd*
        David Boyd
        Assistant Attorney General
        Office of the Attorney General
        109 State Street
        Montpelier, VT 05609-1001
        (802) 828-1101
        David.Boyd@vermont.gov

        Counsel for Defendant